## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLEAN WATER ACTION ) | |
| 100 Fifth Avenue, #1108 ) | |
| Pittsburgh, PA 15222 ) | No. 08-1754 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **FOR INJUNCTIVE AND** |
| HORSEHEAD CORPORATION, INC. ) | **DECLARATORY RELIEF** |
| 300 Frankfort Rd. ) | **AND CIVIL PENALTIES** |
| Monaca, PA 15061 ) | |
| ) | |
| Defendant. ) | |

### CONSENT JUDGMENT

WHEREAS, Plaintiff Clean Water Action ("CWA") is a non-profit environmental organization of diverse people and groups working together to assure supplies of clean, safe and affordable water for all Americans, now and for the future; to prevent health-threatening pollution at its source; to build an economy based on environmentally safe jobs and businesses; and to empower people to take charge of our environmental future.

WHEREAS, Defendant Horsehead Corporation, Inc. ("Horsehead") owns and operates a zinc smelter and ancillary facilities (the "Plant") located at 300 Frankfort Road, Monaca, PA 15061. The Plant is situated alongside the Ohio River.

WHEREAS, Horsehead also owns and operates a residual waste landfill (the "Landfill") located on land across Frankfort Road from the Plant, which is situated alongside Raccoon Creek.

646256_1

WHEREAS, Horsehead, under NPDES Permit No. PA0002208 (the "Permit"), discharges wastewater and stormwater into the Ohio River from numerous outfalls at the Plant and into Ohio River tributary Raccoon Creek from an outfall at the Landfill.

WHEREAS, on October 21, 2008, CWA provided notice of alleged violations of the Federal Water Pollution Control Act (the "Act"), and of CWA's intention to file suit against Horsehead, to the Administrator of the United States Environmental Protection Agency ("EPA"); the Regional Administrator of EPA Region III; the Pennsylvania Department of Environmental Protection; and Horsehead, pursuant to Section 505 of the Act, 33 U.S.C. § 1365 (the "Notice").

WHEREAS, on December 29, 2008, CWA filed a Complaint against Horsehead in the U.S. District Court for the Western District of Pennsylvania seeking declaratory relief, injunctive relief, penalties, and attorneys fees and costs (the "Complaint").

WHEREAS, Horsehead believes that it has meritorious defenses to the allegations in the Complaint filed by CWA.

WHEREAS, prior to and since receiving the Notice, Horsehead has taken a number of actions to improve effluent quality at the Plant, including the following:

- Improved flow measurement at the WWTP;

- Cleaned out process feed tank and sump;

- Carried out pollution prevention and reduction activities at process locations;

- Rehabilitated its dual media filters; and

- Improved process control at the WWTP.

646256_1

WHEREAS, simultaneous with the filing of this Consent Judgment, CWA is submitting copies of the Complaint and the Consent Judgment to the EPA Administrator and the Attorney General in conformance with the requirement of the citizen lawsuit provision of the Act, 42 U.S.C. § 1365(c)(3).

WHEREAS, CWA and Horsehead (collectively the "Parties") agree, and the Court finds, that this Consent Judgment: (i) has been negotiated by the Parties in good faith and its entry will avoid prolonged and complicated litigation among the Parties; (ii) fully addresses, satisfies and represents a settlement of Horsehead's alleged liability for the violations, if any, alleged in the Complaint; (iii) resolves Horsehead's liability, if any, to CWA up to and until entry of this Consent Judgment and for the term of the Consent Judgment; and (iv) is fair, reasonable and in the public interest.

WHEREAS, the Parties, without the necessity of trial or adjudication of any issues of fact or law, and without any admission of liability by Horsehead, consent to the entry of this Consent Judgment resolving the claims asserted by CWA.

## NOW, THEREFORE, IT IS HEREBY STIPULATED BY THE PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

Jurisdiction and Venue:

1.      This Court has jurisdiction over the Parties and the subject matter of this action for purposes of approving and entering this Consent Judgment pursuant to the Clean Water Act, 42 U.S.C. §§ 1365(a)(1)(A) and 1319(b), and 28 U.S.C. §§ 1331 and 1355.

2.      Venue in the U.S. District Court for the Western District of Pennsylvania is proper and is based on 42 U.S.C. §§ 1365(c)(1) and 1319(b), and 28 U.S.C. § 1391.

3.      Solely for the purpose of entry of this Consent Judgment and resolving the underlying Complaint, the Parties waive all objections and defenses that they may have to

jurisdiction of the Court or to venue in this District, and shall not challenge this Court's jurisdiction to enter and enforce this Consent Judgment.

Applicability:

4.      This Consent Judgment shall apply to and be binding upon Horsehead and CWA, as well as Horsehead's officers, directors, agents, successors, assigns, affiliates, and all persons acting on its behalf and CWA's officers, directors, agents, successors, assigns, affiliates and all persons acting on its behalf.

5.      Notwithstanding Horsehead's retention of contractors, subcontractors, or agents to perform any work required under this Consent Judgment, Horsehead shall be responsible for ensuring that all work is performed in accordance with the requirements of this Consent Judgment. In any action to enforce this Consent Judgment, Horsehead shall not assert as a defense the failure of its contractors, subcontractors or agents to take actions necessary to comply with this Consent Judgment, unless Horsehead establishes that such failure resulted from a Force Majeure event as defined in this Consent Judgment. Nothing in this Consent Judgment shall preclude Horsehead from seeking to hold its contractors, subcontractors or agents liable in any other proceeding.

6.      Horsehead shall condition any transfer, in whole or in part, of ownership or operational control of the Plant and/or Landfill upon the transferee's acknowledgment of and agreement to comply with the terms of this Consent Judgment, to the extent any such transfer then involves property or operations subject to the requirements of this Consent Judgment. In the event of such transfer, Horsehead shall notify CWA. Horsehead shall be released from the obligations and liabilities of this Consent Judgment only after the transferee confirms in writing that it agrees to be bound by the Consent

Judgment and such written notice is filed with the Court. The requirements of this Paragraph shall not apply to transfers by Horsehead to any of its affiliates.

7.    CWA assumes no liability by entering into this Consent Judgment, except that associated with a failure to honor its commitments under this Consent Judgment, including, without limitation, with respect to Paragraphs 16, 23, 29 and 36 below.

8.    Nothing in this Consent Judgment shall constitute an admission by Horsehead of any alleged violation or liability, or be used to construe the strength or weakness of the Parties' respective claims or defenses. The Parties agree that this Consent Judgment shall not be used for any purpose by any third party, and that no third party shall have rights hereunder or to enforce the terms hereof.

Authorization:

9.    Each signatory of this Consent Judgment certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind CWA or Horsehead, respectively, to this Consent Judgment.

Commitments of Horsehead Corporation:

10.    Horsehead shall continue to operate, control, and maintain all process and wastewater equipment, including the use of recently employed accelerated maintenance schedules (as generally described in the eighth WHEREAS clause of this Consent Judgment), as necessary, to facilitate compliance with effluent limitations contained in the Permit, except as provided in Paragraph 29.

Penalty Provisions:

11.     Horsehead shall pay a penalty to the U.S. Treasury of $15,000 for the past

violations alleged in the Complaint and any exceedances of the Permit that may have

occurred up to and including the Effective Date of this Consent Judgment. Payment shall

be made within 30 days of the entry of the Consent Judgment and shall be sent to:

> Saundra Doyle
> Debt Collection Specialist
> Environment & Natural Resources Division
> Executive Office
> P.O. Box 7754
> Ben Franklin Station
> Washington DC 20044-7754
> (202) 616-3135

Evidence of payment shall be sent to CWA.

Stipulated Penalties:

12.     On a going forward basis after the Effective Date, Horsehead shall pay

stipulated penalties for exceedances of effluent limitations in its Permit reported by

Horsehead in Discharge Monitoring Reports ("DMRs") submitted to the Pennsylvania

Department of Environmental Protection ("PADEP"), or for failure to timely submit

DMRs to PADEP as follows:

a.     For the first three months following the Effective Date, Horsehead

shall pay a stipulated penalty of $250.00 for each exceedance of a parameter at an

outfall reported by Horsehead in a DMR; and

b.     After the initial three-month period, Horsehead shall pay a

stipulated penalty for each exceedance of a parameter at an outfall reported in a

DMR as follows:

| Exceedance | Stipulated Penalty | Level |
|---|---|---|
| 1 – 8 | $ 500 | Tier 1 |
| 9 – 13 | $1,000 | Tier 2 |
| 14 and above | $2,000 | Tier 3 |

Provided that, if there are no exceedances of a parameter at or discharge from an outfall for any three consecutive months, the determination of the appropriate stipulated penalty amount of any future exceedance at that outfall shall return to the entry number of the prior Tier level, and further provided that if an additional three consecutive months free from exceedance as described above in this paragraph occurs at the same outfall, the Tier level may reset again, if applicable, to Tier 1, as if no prior exceedances had occurred. More than one sample is required to determine an exceedance of an average effluent limitation for purposes of this Stipulated Penalty provision. Stipulated penalties for exceedances of the selenium effluent limitations at Outfall 006 shall be capped at $12,500 per year. Stipulated penalties shall be paid within 30 days of the submission of the DMR indicating the exceedance or failure to report data, and shall be made payable to the U.S. Treasury. Stipulated penalty payments shall be sent to the addressee identified in Paragraph 11, above. Evidence of the payment of stipulated penalties shall be sent to CWA.

Compliance Evaluation and Contingent Corrective Action:

13.    If Horsehead experiences in a rolling six-month period ten or more exceedances of the effluent limitations in the Permit for lead and zinc at Outfall 101 or any effluent limitation in the Permit at Outfall 002 (collectively, "Action Trigger"), Horsehead shall retain a qualified third party consultant ("Consultant") to perform an assessment of the reasons and root causes for the exceedances, along with recommended

646256_1

options for corrective action ("Study"). Horsehead shall retain the Consultant within 30 days of the Action Trigger and shall contract for the Consultant's written assessment to be completed within 60 days from retention. Horsehead shall provide the assessment, data and other materials generated by the Consultant to CWA for its review within ten business days of Horsehead's receipt of the Consultant's assessment, and will give CWA 30 days to provide written comments. Horsehead shall give due consideration to the recommendations of the Consultant and the comments of CWA, and shall within a reasonable timeframe implement those measures Horsehead deems appropriate to achieve compliance with the Permit. This provision commences upon the Effective Date of this Consent Judgment.

14.    If, after completing implementation of the measures pursuant to Paragraph 13, including a reasonable period of time agreed upon by the Parties to allow the measures implemented to become effective, a subsequent Action Trigger occurs, Horsehead shall notify CWA and the Consultant, and promptly meet with their representatives. Horsehead shall thereafter implement additional measures recommended by the Consultant provided the costs for such additional measures do not exceed $150,000. The Parties shall modify this Consent Judgment, as necessary, to confirm the measures Horsehead will implement to address the exceedances pursuant to this Paragraph.

15.    At Horsehead's election, if there are significant exceedances at an outfall other than Outfall 101 or Outfall 002 that require an internal evaluation of additional measures, Horsehead will share that information with CWA and solicit its reasonable input.

Mitigation:

16.    As part of the resolution of this matter, CWA identified a combination of actions specifically related to funding for certain water quality assessment and public education, and preserving in perpetuity certain property of ecological value along Raccoon Creek. The Parties agree that the commitments described below, which were thoroughly evaluated by CWA, provide important public and environmental benefits that are directly related to the exceedances alleged in the Complaint and are suitable projects of significant environmental value consistent with the objectives of the Clean Water Act.

a.    Transfer of Real Property. Horsehead agrees to convey to The Independence Conservancy two separate parcels comprising approximately 15 acres along Raccoon Creek as generally shown on Figure 1, attached to this Consent Judgment. The Independence Conservancy is an independent, Section 501(c)(3) nonprofit Pennsylvania corporation dedicated to stewardship of the Raccoon Creek Watershed with a focus on environmental education and land preservation to protect water quality and wildlife habitat. The Independence Conservancy has no direct or indirect affiliation with CWA. Representatives of CWA and The Independence Conservancy visited both properties and have determined that they have unique ecological and biological value that merit perpetual protection. In particular, the combined properties represent approximately one-half mile of creek frontage in the Lower Raccoon Creek Biological Diversity Area. Preservation of this land as riparian buffer will reduce sedimentation into Raccoon Creek, and keep water temperatures cooler, with beneficial impacts to the ecosystem's food chain. Development will be avoided and high impact recreation contributing to sedimentation currently, such as ATV use, will be severely curtailed

through prohibition. Further, the lands to be conveyed are low-lying floodplains which lessen the impact of storm events by providing areas for flood waters to spread out, lose velocity and drop sediment. Based on written assurance from The Independence Conservancy to CWA, the land conveyed will be held strictly for conservation purposes which shall include public access to riparian land and the Raccoon Creek itself for low-impact, non-motorized recreation.

Accordingly, within thirty (30) days after the Effective Date, Horsehead will initiate the process with Potter Township to subdivide the two parcels. Within 60 days of receiving subdivision approval, Horsehead shall convey the properties to The Independence Conservancy, the titles to which shall be free and clear of any encumbrances. Closing costs, if any, shall be borne by Horsehead. In addition, Horsehead shall pay $15,000 to The Independence Conservancy, at the time the properties are conveyed, to be used by The Independence Conservancy to manage and maintain the land. These funds shall be made payable to "The Independence Conservancy" by certified check, corporate check or money order. Delivery shall be by certified mail, return receipt requested, or overnight mail to The Independence Conservancy , with a copy to CWA, as follows:

> The Independence Conservancy
> c/o Victoria E. Michaels, Executive Director
> 1869-F Barclay Hill Road
> Beaver, PA 15009-9040

Horsehead shall have no liability with respect to the parcels after they are conveyed to The Independence Conservancy. In the event that subdivision of the two parcels cannot be obtained under law, after good faith efforts by Horsehead to obtain such approval, the

Parties shall meet on a timely basis to discuss and select an alternate project of comparable value related to the objectives of this litigation and the Clean Water Act.

      b.     <u>Water Quality Assessment and Public Education</u>.  Horsehead agrees to pay the sum of $10,000 (the "Payment") to the Center for Healthy Environments and Communities (the "Center") within the Graduate School of Public Health, at the University of Pittsburgh, within 30 days of the Effective Date of the Consent Judgment to be used for projects that increase understanding and public awareness of water quality issues in the Pittsburgh region through, and relating to, the collection, analysis and dissemination of water quality data.  The Center has no direct or indirect affiliation with CWA.  Payment by Horsehead shall be conditioned on the following:  (1) the Payment or any portion thereof shall not directly or indirectly be disbursed or otherwise granted to, or controlled by, CWA or any of its organizational members; (2) projects funded by the Payment shall be used to advance research and educational programs regarding water quality in the Pittsburgh region; and (3) the Payment or any portion thereof shall not be used for lobbying purposes.

Horsehead shall have no responsibility to ensure that the Payment is used in accordance with this Paragraph and shall receive an annual report from CWA on the anniversary of the Effective Date describing the use of funds and confirming that the Payment is being used in a manner consistent with this Paragraph.  CWA shall provide second or further annual reports only in the event that a portion of the Payment had yet to be expended by the Center subsequent to the previous annual report.  Horsehead's obligation under the Consent Judgment with respect to the Payment will be fully satisfied when the Payment

is made. Horsehead shall make the Payment payable to the "University of Pittsburgh" by

certified check, corporate check or money order, and designating the check for the

"Center for Healthy Environments and Communities." Delivery shall be by certified

mail, return receipt requested, or overnight mail to the Center, with a copy to CWA, as

follows:

> University of Pittsburgh
> Department of Environmental and Occupational Health
> Attn: Matthew Weaver
> Bridgeside Point, Suite 328
> 100 Technology Drive
> Pittsburgh, PA 15219

Horsehead further agrees that if it publicizes this Payment to the general public,

Horsehead will state that the Payment was made as part of the resolution of a legal action

with CWA.

Fees and Costs:

17.     Horsehead shall reimburse CWA in the amount of $50,000 in full and

complete satisfaction of CWA's claims for attorneys, experts and consultants fees and

costs, and all other costs incurred by CWA in connection with this matter through and

including the date this Consent Judgment is entered by the Court. Payment shall be made

by Horsehead within thirty (30) days of the entry of this Consent Judgment, by certified

check, corporate check or money order, made out to Mid-Atlantic Environmental Law

Center, Inc. ("MAELC"), and be delivered by certified mail, return receipt requested, or

overnight mail at the address listed in Paragraph 30 below. CWA and MAELC, on their

own behalf and on behalf or any expert or consultant, shall neither seek nor be entitled to

any other amounts for any expenditures or obligations, whether paid or owing.

18.    In the event that the occurrence of exceedances of the Permit triggers performance of the Study provided for in Paragraph 13, Horsehead agrees to pay up to a total of $5,000 to CWA to defray the costs of CWA's expert or consultant's review and comment on the Study. Horsehead shall promptly process an invoice from CWA's expert or consultant provided it contains a description of services rendered and the hours expended, and its charges are substantively appropriate and based upon reasonable, then prevailing, market rates. Horsehead agrees that CWA's expert or consultant cost reimbursement of up to a total of $5,000 shall be available for each such Study that may be conducted during the life of the Consent Judgment.

19.    Horsehead shall also make a payment of up to $5,000 per year under the Consent Judgment to CWA for the purpose of defraying costs of legal counsel and analysis for oversight of the implementation of the Consent Judgment. The initial oversight payment of $5,000 shall be made 180 days from the Effective Date of this Consent Judgment. Subsequent oversight cost payments shall be made by the anniversary of the previous oversight cost payment, in response to written notice from CWA, until such time as the Consent Judgment terminates.

20.    Except as provided in Paragraphs 17-19, 22, and 28, Horsehead shall have no obligation to make any payments to CWA, and CWA waives its rights to assert a claim for any further costs, fees or any other expenses relating to this matter throughout the term of this Consent Judgment.

Documentation of Compliance:

21.    In addition to other documents Horsehead is to provide to CWA under this Consent Judgment, Horsehead shall also submit to CWA copies of:

- All DMRs and associated data and correspondence transmitted to PADEP
  along with the DMRs, and Noncompliance Reports sent to EPA or PADEP;
  and
- Other written correspondence and attached documents sent to EPA or
  PADEP relating to the Permit and Permit Application (as defined in
  paragraph 29).

All such reports, correspondence and documents shall be sent to CWA's counsel within
ten business days of their submission to EPA or PADEP.

22.    In the event Horsehead fails to provide CWA with the documents and
other information required by this Consent Judgment, CWA shall provide Horsehead
written notice of such failure. If Horsehead does not cure such failure within ten business
days of receipt of such written notice from CWA, Horsehead agrees to pay and send
CWA an additional oversight payment in the amount of $1,000.00, and will retain the
obligation to provide the documents.

Commitment of Clean Water Action:

23.    CWA commits that it will not initiate new litigation or assert new claims
against Horsehead to enforce against or make demands concerning alleged violations of
the parameters and terms of the Permit or related allegations that are the subject of the
present lawsuit which may occur during the term of this Consent Judgment, as its term is
defined on an outfall specific basis in Paragraph 38. Nothing in this provision is intended
to restrict CWA's right to invoke dispute resolution or otherwise seek to enforce the
terms of the Consent Judgment in accordance with the provisions of the Consent
Judgment. Subject to the Reservation of Rights provided in Paragraph 29 and as limited

by Paragraph 38 below, and other than proceedings to enforce this Consent Judgment,

CWA covenants not to sue Horsehead and shall not assert or participate in any claims,

demands, appeals, causes of action, actions or proceedings, of any kind whatsoever, in

law or in equity, against Horsehead or its parents, affiliates, subsidiaries, officers, directors,

contractors, subcontractors, agents and employees, arising from or related in any way to

any alleged violations of the Permit, up until the entry of and during the term of this

Consent Judgment. CWA waives any right to and agrees not to assert any claims or

demands for payments, penalties, judgments, fines, reimbursement, contribution,

indemnity or of any other kind whatsoever from Horsehead in connection with the

present lawsuit and concerning alleged violations of the parameters and terms of the

Permit or related allegations that are the subject of the present lawsuit, which may occur

during the term of this Consent Judgment, as its term is defined on an outfall specific

basis in Paragraph 38, aside from that which is expressly provided for in this Consent

Judgment.

Force Majeure:

24.    In the event Horsehead is unable to comply in a timely manner with any

obligation imposed in this Consent Judgment due to a fire, flood, strike, act of God or

force of nature, government requirement or order, or other circumstances beyond

Horsehead's control and which Horsehead, through exercise of reasonable diligence, is

unable to prevent, then Horsehead shall be entitled to a reasonable extension of time in

which to comply, during which period no exceedances of any parameter at any outfall

affected by the force majeure event shall be counted for purposes of penalties or

corrective action under Paragraphs 12-15. Horsehead will provide reasonable notice to

CWA regarding the force majeure event including the date such event occurred, the
actions taken by Horsehead to respond to the event and the time for achieving
compliance.

Dispute Resolution:

25.    Horsehead and CWA shall use their best efforts to attempt to resolve all
disputes informally.

26.    If either party determines that there is a basis for dispute, such party shall
provide to the other a written statement setting forth the dispute and the information
relied on to support its position.

27.    In the event Horsehead and CWA are unable to resolve any dispute
regarding any aspect of this Consent Judgment, the dispute shall be submitted by either
party to the Court. Either party may request that the Court refer any such dispute to a
magistrate judge, or if the parties agree to do so, they may jointly request that the Court
refer the dispute to the Alternative Dispute Resolution program established by local Rule
16.2 of the U.S. District Court for the Western District of Pennsylvania. In the event any
dispute subject to this Paragraph occurs, any required written communication shall be
sent to the person designated to receive notice in Paragraph 30 below.

28.    If a party invoking the dispute provisions properly submits a dispute to the
Court and prevails, that party and its counsel shall be entitled to reimbursement from the
non-prevailing party of reasonable fees and costs associated with resolving the dispute
between the parties.

Reservation of Rights:

29.    On January 30, 2006, Horsehead submitted an application to PADEP, as
thereafter supplemented, to renew the Permit ("Permit Application"), and that application
is pending as of the date of the Parties' execution of this Consent Judgment. The Parties
acknowledge that Horsehead's position that the selenium effluent limitations in the
Permit for Outfall 006 are inappropriate is among the issues presented in Horsehead's
Permit Application. CWA continues to believe that the selenium effluent limitations in
the Permit for Outfall 006 are appropriate. Notwithstanding CWA's position, the Parties
agree that measures to reduce selenium concentrations and exceedances at Outfall 006,
other than Horsehead's ongoing efforts to minimize the concentrations, are not required
by this Consent Judgment and will not be implemented by Horsehead until a final
determination on the appropriate effluent limitations at Outfall 006 has been made in
connection with PADEP's issuance of a final Permit (whether new, renewed, modified or
amended, hereinafter referred to as the "New Permit"), and after the exhaustion of all
remedies and appeals. Accordingly, the Parties agree that the provisions for evaluations
and corrective action otherwise provided for in Paragraphs 13-15 and 18-20 above shall
not apply to Outfall 006. Notwithstanding the foregoing, CWA shall have only the
following rights, and no others, with respect to the issuance of the New Permit: (a) to
submit written comments during any public comment period concerning the proposed
selenium limitations in the New Permit, and (b) to challenge and/or contest any
determination by PADEP in the New Permit regarding the effluent limitations for
selenium at Outfall 006 in any forum; provided, however, that no payments made by
Horsehead under this Consent Judgment shall be used by CWA, directly or indirectly, to

finance or underwrite fees or expenses in connection with commenting on or otherwise

challenging the selenium effluent limitations at Outfall 006 in any New Permit issued by

PADEP.

Miscellaneous Provisions:

    30.    Unless otherwise specified herein, all notices, documents and other

correspondence to be sent pursuant to this Consent Order shall be sent to the following

representatives of CWA and Horsehead respectively:

| On behalf of CWA: | On behalf of Horsehead: |
|---|---|
| Mary A. Jacobson | Marc E. Gold |
| Mid-Atlantic Environmental Law Center | Manko Gold Katcher & Fox, LLP |
| 4601 Concord Pike | 401 City Avenue, Suite 500 |
| Wilmington, DE 19803 | Bala Cynwyd, PA 19004 |
| (302) 477-2086 | (484) 430-5700 |
| (302) 477-2032 (Fax) | (484) 430-5711 (Fax) |
| majacobson@widener.edu | mgold@mgkflaw.com |

Either party may change its designation of persons to receive notice by sending written or

electronic notice of the change to the other party pursuant to this Paragraph.

    31.    This Consent Judgment has been negotiated by the Parties through their

respective authorized counsel. Each party warrants and represents that the terms of this

Consent Judgment were discussed with counsel and are voluntarily accepted for the

purpose of arriving at a settlement between Horsehead and CWA.

    32.    This Consent Judgment contains the entire agreement between the Parties

concerning the subject matters set forth in this Consent Judgment. There are no other

understandings or agreements, verbal or otherwise, concerning the subject matters set

forth in this Consent Judgment, except those expressly set forth herein.

33.    Unless otherwise agreed by the Parties, the terms of this Consent Judgment shall not be changed, revised or modified except by a written instrument signed by Horsehead and CWA and approved by the Court.

34.    Both Horsehead and CWA drafted this Consent Judgment. Any ambiguities contained herein shall be resolved by the Court.

35.    This Consent Judgment may be signed in counterparts. Signatures of the Parties transmitted electronically or by facsimile are binding.

36.    CWA and Horsehead agree to independently and jointly support entry of this Consent Judgment, respond to any comments submitted to the Court relating to the Consent Judgment and defend the terms of the Consent Judgment if challenged by any third party by any means, including in any proceeding. If for any reason the Court should decline to approve this Consent Judgment in the form presented, the Parties agree to work together to modify the Consent Judgment within 30 days to endeavor to make it acceptable to the Court.

37.    The Parties agree to submit this Consent Judgment to the Court for its approval and entry as an Order.

Termination:

38.    Except with respect to Outfall 006, this Consent Judgment shall terminate the earlier of (a) three years after the Effective Date of the Consent Judgment, or (b) on an outfall-by-outfall basis whenever Horsehead's DMRs show that the effluent limitations at such outfall have been met for a period of six consecutive months calculated from (i) the Effective Date in the case of Outfalls 101 and 002; and (ii) 45 days from the execution of this Consent Judgment by the Parties in the case of all other

outfalls (not including Outfall 006). Horsehead shall enclose with its DMRs, as appropriate, written notification that termination under subparagraph (b) is appropriate. With respect to Outfall 006, this Consent Judgment shall terminate after PADEP issues the New Permit; provided that Horsehead has demonstrated compliance with the selenium effluent limitations at Outfall 006 specified in the New Permit for six consecutive months. This Consent Judgment shall not be finally terminated unless and until Horsehead has made all payments required under the Consent Judgment, and contingent actions under Paragraphs 13 and 14, if triggered, have all been fully implemented. Termination of this Consent Judgment shall not divest the Court of jurisdiction to decide any outstanding matter properly brought before the Court pursuant to the Dispute Resolution provisions of this Consent Judgment.

Notice to the United States:

39.    The Parties shall submit this Consent Judgment to the Court with acknowledgment of Section 505(c)(3) of the Clean Water Act, 33 U.S.C. § 1365(c)(3), which provides that no Consent Judgment shall be entered in an action in which the United States is not a party prior to 45 days following receipt of copies of the Consent Judgment by the Attorney General of the United States and the Administrator of EPA.

Effective Date:

40.    This Consent Judgment shall be effective five business days after it is entered by the Court ("Effective Date").

21

IN WITNESS THEREOF, the parties have caused this Consent Judgment to be executed by their duly authorized representatives.

BY: _James M. Hensler_                          BY: _____

(Print) _James M. Hensler_                      (Print) _____

Title: _President & CEO_                         Title: _____

    Horsehead Corporation                        Clean Water Action
    4955 Steubenville Pike, Suite 405             100 Fifth Avenue, #1108
    Pittsburgh, PA  15205                         Pittsburgh, PA  15222

Dated: ___10/23/09___                            Dated: _____


_____                 _____
Marc E. Gold                                     Michael D. Fiorentino
Manko, Gold, Katcher & Fox, LLP                  Mid-Atlantic Environmental Law Center
401 City Avenue, Suite 500                       4601 Concord Pike
Bala Cynwyd, PA 19004                            Wilmington, DE  19803

Counsel for Horsehead                            Counsel for Clean Water Action


Signed this 29th day of
December, 2009


_____
William L. Standish
United States District Judge

IN WITNESS WHEREOF, the parties have caused this Consent Judgment to

be executed by their duly authorized representatives.

BY: _____

Print: KATHLEEN C ARIN

Title NATIONAL MANAGEMENT

Horsehead Corporation
4955 Steubenville Pike, Suite 405
Pittsburgh, PA 15205

Clean Water Action
100 Fifth Avenue, # 405
Pittsburgh, PA 15222

Dated _____

Michael D. Helbling
Mid-Atlantic Environmental Law Center
4601 Concord Pike
Wilmington, DE 6803

Counsel for Horsehead Corporation

Mark L. Gold
Manko Gold Katcher & Fox, LLP
401 City Avenue, Suite 500
Bala Cynwyd, PA 19004

Counsel for Clean Water Action

# FIGURE 1

